IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOSEPH HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18-cv-1062-DWD |
| | ) | |
| JAMES BELFORD, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Joseph Harris, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Graham Correctional Center, commenced this action by filing a Complaint pursuant to 42 U.S.C. § 1983 for the deprivation of his constitutional rights that occurred while at Pinckneyville Correctional Center ("Pinckneyville"). (Doc. 6).  This matter is before the Court on a Motion for Summary Judgment filed by the remaining Defendant, James Belford. (Doc. 35).  For the reasons set forth below, the Motion is **GRANTED**.

## Background

Following a review of the Complaint pursuant to 28 U.S.C. § 1915A, Plaintiff proceeded on the following claims:

Count 1:    Eighth Amendment excessive force claim against Belford for spraying Plaintiff with mace and forcing his cuffed arms into a painful position;

Count 2:     First Amendment retaliation claim against Belford for falsely claiming that Plaintiff grabbed his arm because Plaintiff filed a grievance over Belford's conduct;

Count 3:     Eighth Amendment deliberate indifference claim against Belford for placing Plaintiff in a holding cell where he was unable to clean the mace from his body and for failing to obtain medical care for Plaintiff's injuries;

Count 4:     Eighth Amendment claim against the Jane Doe Nurse for failing to provide Plaintiff with medical care for the after-effects of the mace, including trouble breathing, irritated eyes, sinuses, and skin, and for his injured wrists; and

Count 5:     State law claims for assault and battery against Belford for spraying Plaintiff with mace and injuring his arms and wrists.

(Doc. 10). Defendant Jane Doe Nurse has subsequently been dismissed due to Plaintiff's failure to identify her. (Doc. 48).

## Material Facts

On August 17, 2017, Defendant Belford and other correctional officers came to Plaintiff's cell. (Doc. 6, p. 6). Plaintiff's cellmate, Desmond Brown, was going to be placed in segregation due to prior threats of violence against security staff. (Doc. 36, p. 2). There is significant debate as to what happened next—Plaintiff and Brown were either simply told to "cuff up" or were told multiple times to come to the food slot to be restrained so that Inmate Brown could be removed from the cell. (Docs. 39, p. 1 and 35-4, p. 15). Both inmates did not comply, and Plaintiff responded, "I'm riding out with my homie." (*Id*.).

Plaintiff testified that Belford sprayed him with oleoresin capsicum ("O/C") spray through the chuckhole in the door without further warning, and then sprayed him again

from behind after he had been cuffed while he was complying with instructions to walk to the back of the cell. (Doc. 35-4, pp. 15-16, 23-24). Plaintiff also stated that Belford threatened him with violence if he told anyone about the incident. (*Id.*, p. 41).

Belford's account is that after multiple orders, Brown approached the food slot in an apparent acceptance but grabbed Belford's arm through the food slot. (Doc. 39, pp. 1-2). Belford's testimony is that he then administered one short burst of O/C spray in order to cause Brown to release his arm, and that he never directed any O/C spray at Plaintiff. (*Id.*).

Plaintiff testified that he was taken to a holding cell with his arms held up and behind his back, was seen by a nurse who gave him a napkin-sized gauze pad and placed in a segregation cell without the opportunity to shower. (Doc. 35-4, pp. 25, 28).

Belford testified that Plaintiff and Brown were taken separately to shower cells in different wings so they could clean off, and that he escorted Brown. (Doc. 39, p. 2). He also contacted the nursing staff to have the inmates evaluated and treated. (*Id.*).

Both inmates were issued disciplinary reports. (*Id.*, pp. 3-4; and Doc. 35-4, p. 49). Plaintiff was issued a disciplinary report for disobeying a direct order and was found guilty of the charges by the Adjustment Committee. (Doc. 35-3).

## Discussion

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party is entitled to summary judgment where the non-moving party "has failed to make a sufficient showing on an essential element of her

case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. When deciding a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). However, if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

## Count 1

The Eighth Amendment prohibits the unnecessary and wanton infliction of pain on prisoners. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). On a claim for excessive force, "the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* Factors in such an inquiry include the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner. *Id.* In order to survive a motion for summary judgment, the prisoner must have evidence that "will support a reliable inference of wantonness in the infliction of pain." *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004). A plaintiff need not demonstrate a significant injury to state a claim for excessive force; however, "a claim ordinarily cannot be predicated on a *de minimis* use of physical force." *DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000). The quantum of force required for a

constitutional violation is that which is "repugnant to the conscience of mankind." *Fillmore*, 358 F.3d at 504. The "use of mace is not a *per se* violation of the Eighth Amendment, and it can be used in limited quantities when reasonably necessary to subdue or maintain control over an inmate." *Musgrove v. Detella*, 74 F. App'x 641, 645 (7th Cir. 2003).

There is no genuine issue of material fact regarding Plaintiff's excessive force claim against Belford. First, Plaintiff has not presented any evidence to suggest Belford's use of O/C spray was intended maliciously or sadistically to cause harm. Plaintiff does not challenge that Belford and the other officers came to the cell in order to escort his cellmate Brown to segregation after Brown had previously refused orders and threatened to kill security staff. (Doc. 35-1, p. 1; Doc. 35-4, p. 17, Doc. 42, p. 2; Doc. 42-1, p. 1). Similarly, there is no question that Plaintiff did not comply with the order to "cuff up." Even in Plaintiff's telling, he responded "I don't have any keys or handcuffs. I'm riding out with my homie." (Doc. 35-4, pp. 20, 21, 24). As the Seventh Circuit has observed, "[i]nmates cannot be permitted to decide which orders they will obey, and when they will obey them." *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984). In light of Brown's prior threats of violence and his refusal to comply with instruction, the situation presented "a reasonable possibility that slight force [would] be required" *Thomas v. Walton*, 461 F. Supp. 2d 786, 792 (S.D. Il. 2006) (citing *Soto*, 744 F.2d at 1270), and no reasonable finder of fact could conclude that Belford's initial spray of O/C was evidence of, under such circumstance, a malicious or sadistic purpose.

Plaintiff asserts that the use of O/C was malicious because Belford sprayed without warning and clear and precise orders that O/C would be used. (Doc. 42, p. 2), Plaintiff argues as well that Belford "did not follow proper protocol in issuance of O/C spray" and prison policy requires that a warning be given to prisoners before spraying mace. (Doc. 42-1, pp. 4, 6).  However, failure to comply with IDOC regulations regarding the use of mace on an inmate is not determinative of whether or not Belford violated Plaintiff's constitutional rights.  See *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003). (Section 1983 protects against "constitutional violations, not violations of ... departmental regulation and ... practices[.]").

Plaintiff further argues that the O/C was sprayed before there was any physical contact between himself and the officers, and that other means were not first tried to "temper" the situation. (Doc. 42-1, p. 6).  "However, the [Eighth] Amendment does not require prison guards to engage in physical struggle with an inmate before using chemical mace. Indeed, part of the rationale for using mace is to allow the guards to avoid engaging in physical altercations with an inmate."  *Whitemore v. Walker,* No. 04-cv-837-JPG, 2009 WL 900034, at *9 (S.D. Ill. Mar. 27, 2009).

In light of the previous threats of violence made by inmate Brown, the refusal to comply with an order by Plaintiff and Brown, and Plaintiff's statement of apparent solidarity with Brown, no reasonable jury could find that Belford used excessive force when issuing the first burst of O/C spray through the chuck hole door prior to entering the cell.

As to the alleged second spray of O/C, Plaintiff has not produced any evidence that Belford was the one who sprayed him. Gratuitous use of chemical agents, especially once an inmate has been subdued, could be considered evidence of sadistic or malicious intent. See *Graham v. Hildebrand,* 203 F. App'x 726, 731 (7th Cir. 2006). In his Brief in Opposition, he states that the "defendants then entered the cell, sprayed o/c again without provocation." (Doc. 42-1, p. 1-2). In the brief and in his deposition, he states that after the first spray of mace he could not "see a thing," (Doc. 35-4, pp. 22, 32; Doc. 42-1, p. 6), and only knew he had been sprayed with mace a second time because he could feel it on his body. (Doc. 42-1, p. 6). Plaintiff offered no other evidence or factual assertions in his declaration to support his claim to contradict Belford's testimony that he only fired one spray of O/C. *See Rosenbach v. Nordstrom,* No. 98 C 0726, 2001 WL 199795, at *4 (N.D. Ill. Feb. 22, 2001) (granting summary judgment on a failure to protect claim where the plaintiff testified "that his eyes were closed and he could not see who was holding the mace" and offered no other evidence to support his claim).

The record also fails to demonstrate a genuine issue of material fact regarding Plaintiff's walk to segregation with his hands in a stress position above his head. In his deposition, Plaintiff testified that after being handcuffed, "they" had him place his hands in the air while his torso was down horizonal to the ground "messing up [his] wrists[.]" (Doc. 35-4, pp. 25-26). In his declaration, Harris states the he and Brown were escorted to segregation "in one group, at the same time, by the same defendants et al." (Doc. 42, p. 4). Neither of these statements demonstrates that Belford applied force, let alone did so maliciously. "Vague references to a group of 'defendants,' without specific allegations

tying the individual [defendant] to the alleged unconstitutional conduct, do not raise a genuine issue of material fact with respect to [that defendant]." *Grieveson v. Anderson,* 538 F. 3d 763, 778 (7th Cir. 2008).

Accordingly, the Court finds that are no genuine issues of material fact for trial regarding the use of excessive force by Belford, and summary judgment will be granted as to Count 1.

### Count Two: First Amendment Retaliation

"An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt,* 224 F.3d at 618.  The Complaint alleges that Belford retaliated against Plaintiff for filing grievances about Belford's use of mace on August 17, 2017, by falsely stating in a grievance response that Harris had grabbed Belford's arm. (Doc. 6, p. 8).

In order to prevail on his First Amendment retaliation claim, Plaintiff "must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the defendant's decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)) (other citations omitted).

Belford argues that there is no evidence that Plaintiff suffered any negative consequences as a result of his response to Plaintiff's grievance, and that the response to the grievance was not the type of adverse action that would deter a person of "ordinary firmness" from engaging in First Amendment activity in the future. (Doc. 36, p. 9-10).

Plaintiff has failed to "put forth evidence from which a reasonable juror could find that his protected activity motivated the [defendant] to retaliate against him." *Clark v. Lind*, 761 F. App'x 633, 636 (7th Cir. 2019). First, the record suggests that the alleged retaliation did not actually occur. In his declaration, Belford states that his response to the grievance "indicated that *an inmate* grabbed my arm through the food pass slot." (Doc. 39, p. 2) (emphasis added).[1] Plaintiff does not refute Belford's description of the response, but rather argues that "by stating that an inmate grabbed his arm in plaintiff's grievance, it gives the air of guiltiness on his part." (Doc. 42-1, p. 7). The Offender Disciplinary Report (Doc. 35-3, p. 2) and the Incident Report (Doc. 35-1) completed and signed by Belford report that inmate Brown, not Plaintiff, grabbed his arm. As such, there is no evidence in the record to suggest that the alleged retaliatory action (Belford falsely reporting that he grabbed Belford's arm in the grievance response) actually took place.

Second, there is no indication that Plaintiff suffered a deprivation as a result of the response to his grievance. In his deposition, Plaintiff admitted that there were no adverse consequences from Belford's grievance response. (Doc. 35-4, pp. 54, 55).

Plaintiff attempts to evade summary judgment by essentially changing his claim, alleging in his Response brief that the retaliation "was the non-response to future grievances of the incident at hand[,]" in that he alleges that he filed four grievances, three of which went missing. (Doc. 42-1, p. 7). This is essentially a new claim, however, and not appropriately brought in the opposition brief. *See Grayson v. O'Neill*, 308 F.3d 808,

---

[1] There is no copy of Belford's response to the grievance in the record.

817 (7th Cir. 2002) ("[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").  Moreover, there are no facts pled or evidence presented that Belford was involved in the processing or handling of the alleged missing grievances.  As such, summary judgment is appropriate as to Count 2.

### Count Three

Plaintiff claims Belford violated his rights by placing him in a holding cell where he was unable to clean the O/C from his body and for failing to obtain medical care for Plaintiff's injuries.  An Eighth Amendment conditions of confinement claim requires a plaintiff to show that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety, and that the defendant acted with deliberate indifference to a substantial risk of serious harm to the inmate from those conditions.  *Farmer v. Brennan*, 511 U.S. 825, 834 and 842 (1994). Similarly, a prisoner's claim for deliberate indifference must establish "(1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012).  Deliberate indifference is shown by demonstrating that a prison official knows of a substantial risk of harm to an inmate and "either acts or fails to act in disregard of that risk." *Id.*

Belford argues that Plaintiff cannot demonstrate that he acted with deliberate indifference towards the conditions of the holding cell as he was in another wing taking Brown to a different holding cell.  In his declaration, Belford states that the inmates were both transported to holding cells that had showers and were allowed to wash off. (Doc.

39, p. 2). He also states he "contacted nursing staff who evaluated and treated the inmates and cleared them to be escorted to segregation." (*Id.*).

Regardless of the factual dispute regarding which correctional officer placed Plaintiff in the holding cell, Plaintiff has failed to show a genuine issue of material fact as to the conditions in that cell.  Belford testified the holding cells had a shower, and both Plaintiff and Brown was given an opportunity to shower.  Plaintiff states in his summary judgment declaration that "I was not placed in a shower cell and allowed to wash up." (Doc. 42, p. 3).  However, this declaration is inconsistent with his deposition testimony. Parties may not create "'sham' issues of fact with affidavits that contradict their prior depositions[.]" *Ineichen v. Ameritech*, 410 F. 3d 956, 963 (7th Cir. 2005).  See also *Simmons v. Chi. Bd. of Educ.*, 289 F. 3d 488, 492 (7th Cir. 2002) (a "party may attempt to clarify or augment (but not contradict) prior deposition testimony through affidavits").  When asked in his deposition whether the temporary cell was a shower cell, Plaintiff answered, "I don't know because like I said, I didn't see nothing.  I was put [in] a cell, a segregation cell." (Doc. 35-4, p. 31).  He also stated that "it could be possible" that he was placed in a segregation shower cell, but "again, I can't see.  So they could have put me, you know, in an office or anywhere. I can't see a thing." (*Id.* at p. 34).  This is a clear answer—he was not aware whether there was a shower in the cell or not.  His present declaration that there was not a shower does not create a genuine issue of fact.  Whether or not Plaintiff realized there was a shower in the holding cell, he has not refuted Belford's testimony that a shower was available.

There is also no evidence that Belford was deliberately indifferent to Plaintiff's medical needs.  Belford states that he contacted nursing staff to evaluate and treat Harris and to clear him to be escorted to segregation. (Doc. 39, p. 2).  It is not disputed that a nurse visited Plaintiff in the holding cell, and that the nurse arrived at the holding cell about fifteen to twenty minutes after being placed there. (Doc. 35-4, p. 29).  Plaintiff testified that he did not know how medical staff knew to come to his holding cell and that "obviously they had been told that I was sprayed."  (*Id.*).  The adequacy of the medical staff's treatment has no bearing on whether Belford was deliberately indifferent. The undisputed evidence is that Belford contacted medical staff and informed them of Plaintiff's need for evaluation and treatment, and that medical staff responded.  As such, summary judgment is appropriate on Count 3.

### Count Five

The only remaining claims are Plaintiff's state law claims for assault and battery. "Generally, when a court has dismissed all the federal claims in a lawsuit before trial, it should relinquish jurisdiction over supplemental state law claims rather than resolve them on the merits." *Cortezano v. Salin Bank & Trust Co.,* 680 F.3d 936, 941 (7th Cir. 2012). *See also Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1252 (7th Cir. 1994) ("when all federal-law claims are dismissed before trial, the pendent claims should be left to the state courts").  There are of course exceptions to this general rule, and the Court may make a determination to retain jurisdiction when: "(1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will

cause a substantial duplication of effort; or (3) it is absolutely clear how the pendent claims can be decided." *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514–15 (7th Cir. 2009) (quoting *Wright*, 29 F.3d at 1251) (internal quotations omitted).

None of the exceptions exist in this case and this Court declines to exercise jurisdiction over the state law claims. While the statute of limitations has likely run on Plaintiff's remaining state law claims, there is an Illinois statute that authorizes tolling in these circumstances. *See* 735 ILCS 5/13-217 (Illinois law allows a claimant one year to refiled in state court a claim dismissed "for lack of jurisdiction" by a federal court). The resources and time expended have been largely focused on the constitutional claims and do not justify keeping the case in federal court or make it absolutely clear on how the claims will be decided. Exercising supplemental jurisdiction over the remaining state law claims is therefore not warranted and Count 5 is dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3).

## Disposition

For the reasons stated above, the Court **GRANTS** the Motion for Summary Judgment (Doc. 35) in favor of Defendant Belford and **DISMISSES** Counts 1, 2, and 3 with prejudice. The remaining state law claims (Count 5) are **DISMISSED without prejudice** for lack of jurisdiction. The Court **DIRECTS** the Clerk of Court to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  November 23, 2020**

**DAVID W. DUGAN**
**United States District Judge**